THE PEOPLE on the relation of DINSMORE a. THE CRO-TON AQUEDUCT BOARD OF THE CITY OF NEW YORK.

*Supreme Court, First District; Special Term, October,* 1857.

PARTNERSHIP ACTS.—" PARTY."—MANDAMUS.

An estimate for a corporation contract purported by its title to be made by J. M. W. and S. P. D., under the name and style of D. W. & Co. It was subscribed by each individual name, and also by the firm name.

*Held,* that it was to be treated as a partnership act of the firm, and not as that of the individual partners.

The word "party," in itself considered, may mean either a single individual, or a class or number of persons holding a certain interest, or united in a certain relation.

Which of these meanings it bears, in a given connection,—*e. g.,* in a statute re-

quiring a certain instrument to be verified by the oath of the *party* making the same,—is to be determined from the context.

Section 498 of the city ordinance of 1849,—which provides that an estimate for a corporation contract shall be verified by the oath of the party making the same,—is only satisfied in case of an estimate made by a partnership, by giving the oath of each partner.

An estimate made by two partners for a corporation contract was publicly opened, pursuant to notice in the proposals, in the presence of such bidders as chose to attend, and was found defective. The defect was then and there announced in the hearing of one of the partners by whom it was made. The other partner was absent ; and the defect was one which he only could correct.

*Held,* that this was sufficient notice of the defect under section 501 of the city ordinance of 1849,—which provides that no such estimate shall be rejected for error of form, provided the person or persons making the same shall correct it within twenty-four hours after notice of any such defect.

Application for a mandamus.

The facts of the case sufficiently appear in the opinion of the court.

*Abbott Brothers* and *James W. Nye*, for the motion.

*Richard Busteed*, corporation counsel, and *David Dudley Field*, opposed.

PEABODY, J.—The Croton Aqueduct Board in July, 1857, issued proposals and advertised for bids for the construction at New York Hill of a new reservoir for the Croton water, to cover 106 acres of land, and to be 40 feet in depth.

The relators in due time made their bid or estimate for the work, in which they offered to do it in six hundred working days, for $524,298.97, which, they say, was a less sum than was bidden by any one else.

The defendants refused to consider or entertain the bid for two reasons, to which, on the argument, they added a third.

1. That the estimate of the relators was verified by the oath of one only of the relators, namely, Dinsmore, when it should have been by the oaths of both.

2. That the estimate, being made by the relators under the firm name of Dinsmore, Wood & Co., was in violation of the statute prohibiting the use of the words " and Company," or " and Co.," except to represent an actual partner.

3. On the argument, the objection was made, for the first

time, that the persons offering themselves as sureties had not added to their names their places of residence respectively.

As to the first of these objections, part 3, of title 3, of an ordinance passed May 30, 1849, established certain regulations relative to contracts to be made, as follows :—

Section 497 provides that each estimate shall contain, among other things—

The name and place of residence of the person making it.

The names of all persons interested with him therein ; and if no other person be so interested, it shall distinctly state that fact.

That it is without connection with any other person making an estimate for the same purpose, and is fair, &c.

That no member of the Common Council, head of department, chief of bureau, deputy thereof, or clerk therein, or other officer of the corporation, is directly or indirectly interested therein, &c., &c., &c.

And section 498 provides as follows :

" It (meaning the estimate) shall be verified by the oath, in writing, of the party making the estimate, that the several matters stated therein are in all respects true."

An oath, in this case, was made by Dinsmore alone, and none was made by Wood ; and it is urged, as a reason for excluding and refusing to consider the bid, that the oath of one was not sufficient, but the oath of both was required by the ordinance.

The estimate made by the relators was made (to quote the language in which they describe themselves) by John M. Wood, of Portland, Me., and Samuel P. Dinsmore, of the city, county, and State of New York, " under the name and style of Dinsmore, Wood & Co."

The argument, on both sides, seemed to assume that the estimate was made by the firm of Samuel P. Dinsmore & Co., composed of the relators; and I am inclined to think that this is the case. The parties describe themselves in the body of the paper by, and in form make the estimate in, their individual names, adding thereto the words, " under the name and style of Dinsmore, Wood & Co." The instrument commences, " Proposals * * * made by John W. Wood, of * * *, and Samuel P. Dinsmore, of * * *." They do not assume to contract in form as a firm, nor do they even describe themselves as members of, or say that they compose the firm. This looks more like the act of

the individuals jointly, than that of the partnership; but the addendum, " under the name and style of Dinsmore, Wood & Co.," is entirely unmeaning, unless it means that the individuals who are so described are acting as the firm or partnership of that name. This, I think, is the meaning of the language at this part of the proposals, and the signatures are quite consistent with this interpretation. The paper is signed with the full names of the two partners individually, and also with the name of the firm; and here the name of the firm seems to be entirely without effect or purpose, if the act is not done by it rather than the individuals; whereas, the use of the names of the partners (although unnecessary) is not so inconsistent with the idea that they intend to contract as a partnership firm.

Assuming, then, that the bid is made by the partnership firm of Dinsmore, Wood & Co., composed of Samuel P. Dinsmore and John M. Wood, is the oath of Dinsmore alone a compliance with section 498, which requires that "it (the estimate) shall be verified by the oath in writing of the party making the estimate," &c., &c. ?

To my mind this question is one of no ordinary difficulty; and the very able arguments have left me in great doubts about it. The literal meaning of the word "party" affords no guide. It is as consistent with the claim of the relators as with that of the defendants. It means as naturally a body composed of several individuals, as a body sole and individual, and no more so. The term "party," used in reference to a contract like this (for this estimate is a contract in itself, or one part of a contract), may as readily mean a class or body consisting of several members, who hold a certain relation to it, as one member, the sole representative of that interest; and the term would be equally proper in speaking of the author of this estimate, if that author were a single man, or a partnership-firm, or a corporation, or, indeed, any number of persons composing the body, provided they were united in interest and acting jointly as a unit.

In this case, for instance, Messrs. Dinsmore and Wood were, beyond all question, competent members of the firm of Dinsmore, Wood & Co.; and as to the world, and all persons other than themselves, whenever they act together as a firm, they are properly styled a party to the transaction in reference to which they act; while among themselves (*inter sese*) each of them, in

reference to the other, is properly styled a party, and the two together are properly, as to each other, styled parties. Each of them, for instance, is a party to the contract of partnership between them, while the two together are, with equal propriety, styled a party, or one party, in relation to this estimate or contract.

The abstract, lexicographical definition, or meaning of the term, affords no aid in this inquiry. It everywhere implies unity ; but is as properly used to signify a unit composed of many parts, as an individual, or one incapable of division, actual or speculative, if such a one can be.

We must, therefore, look to other sources for light on this subject. It must be drawn from the context, and the connection in which it is used ; and here, too, it can be found only with great difficulty and is very dim.

Section 497 provides that the estimate shall contain " The name and place of residence of the *person* making the same." Here the word " person" is used. Not that the estimate must not be made by more than one person, for it evidently may be made by more than one, while the word itself cannot literally signify more than one ; and the meaning of this sentence is, that the estimate must contain the name and place of residence of the person making it, *and the names and places of residence of the persons, if there be more than one person making it.*

So subdivision second of the same section provides that the estimate shall contain the names of all persons interested with " *him ;*" as if the bid or estimate could only be made by a single person, which, as I have said, it is apparent to any one, could not have been intended.

In both these places in this section (497) the words used, when the author or maker of the estimate is intended, are words which in themselves can mean only one ; and yet so obvious is the necessity for applying these provisions to a case where the bid is made by more than one, that the legal reading of it must, in each case, be made to include in its signification and interest the plural as well as the singular of these words. No one can doubt that this section requires that the estimate shall contain—1, the name and place of residence of the person, and the names and places of residence of the *persons*, if there be more than one person, &c., &c.; and, 2, that it shall contain the names of all

persons interested with " him"—or *them*, if the bid be made by more than one person.

The next section of the ordinance (498) is the one above quoted, which requires the verification of the estimate by the written oath of " the party" making it. Here the word " party" is used in speaking of the same being who, in the preceding section, is always spoken of as " person." Here, too, as there, it is quite certain that the author of the bid spoken of may be either one person or more, and the word " party" is intended to express one or more, as the bid may be made by one or more.

The word " person," in the preceding section, wherever it occurs, means one or more, and should be read " person or persons." The change of phraseology, in passing from that section to this, is the substitution of the word " party" in this for the word " person" in the preceding ; and as the word used to express the same meaning in the earlier section must evidently be read to signify one or more, so must its substitute or representative be so read; and " party" here means and must be held to embrace all the persons making it, be the number one or more. This section, then, requiring the verification of the estimate by the oath of the party making it, in effect requires the verification of it by the oath of the party (person or persons) making it, whatever the number may be.

The definite article before the word oath is more consistent with this than the opposing theory. If the section required only *an* oath of the party, it would be less definite, and if it required only " verification by the party *on* oath," it might be more easily held that a single oath was sufficient. If it required there should be *an* oath of the party making it, I should think that the oath of any one of several persons composing the party would certainly be sufficient. So the use of the same article before the word " party" tends to strengthen my view. The oath of a party would not so certainly mean the oath of more than one of several persons composing the party. I think that the language " *the* oath of *the* party" naturally means more than the language " oath of the party," and more than " an oath of the party ;" and still more plainly, more than " an oath of a party," or " oath of a party."

In the view I have taken, it is not necessary to the decision

of this motion, that I should consider the other reasons urged for refusing to entertain the bid.

Whether the error was one of form or substance, may be somewhat doubtful, though I am inclined to think that the entire omission of the oath of a party, whose oath is required, is matter of substance. But the verbal statement of the objection, by the board, to Mr. Dinsmore, was a good notice to both of the defect. The bill, I think, did not conform to the ordinance strictly, and as the rule established by precedents, by which I am bound, is *strictissimus*, I am compelled to refuse the peremptory *mandamus*.

---

## WHITE a. THE MAYOR, &c., OF THE CITY OF NEW YORK.

*New York Superior Court; Special Term, October*, 1857.

COMPLAINT.—AMENDMENT OF COURSE.—DEMURRER.

Under section 172 of the Code, a plaintiff cannot amend his complaint more than once, as a matter of course, without leave of the court.

If he amends it, before answer or demurrer, his right to amend of course is exhausted; and if his amended complaint is demurred to, he cannot amend it a second time without leave of the court.

Motion to require defendant to receive an amended complaint.

The plaintiff in this action, before the time to answer expired, served an amended complaint. To that the defendant demurred. The plaintiff, within twenty days thereafter, again amended his complaint, and the defendant returned the copy served, on the ground that the plaintiff having amended once, could not amend a second time, without leave of the court. The plaintiff now moved that defendant be required to receive the complaint, and the question now presented was simply this : Was the second amendment of the complaint regular?

*M. V. B. Wilcoxson*, for the motion.

*A. R. Lawrence*, jr., opposed.